Greg BONIN, et al.,

v.

WORLD UMPIRES ASSOCIATION.

No. CIV. A. 01–2626.

United States District Court, E.D. Pennsylvania.

Oct. 16, 2001.

Patrick C. Campbell, Jr., Richard G. Phillips Associates, P.C., Philadelphia, PA, for plaintiffs.

Laurence M. Goodman, Willig, Williams & Davidson, Philadelphia, PA, Joel A. Smith, Travis M. Mastroddi, Kahn, Smith & Collins, P.A., Baltimore, MD, for World Umpires Association.

Michael S. Burkhardt, Morgan, Lewis & Bockius LLP, Kevin A. Ormerod, Morgan, Lewis & Bockius, Philadelphia, PA, for Officer of the Commissioner of Major League Baseball.

## MEMORANDUM

BARTLE, District Judge.

This is an action by fifteen major league baseball umpires against the World Umpires Association ("WUA"), a labor organization which is the exclusive bargaining agent representing all major league umpires. Before the court is the motion of the WUA for a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.

The plaintiffs are officers and members of the Major League Umpires Association ("MLUA") which formerly represented all umpires before it was decertified and replaced by the WUA after a contested election conducted by the National Labor Relations Board. As a condition of employment, all umpires must now be members of the WUA or, in lieu of membership, must pay it what is known as a financial core fee. Plaintiffs are challenging the validity or alternatively the calculation of this assessment. The collective bargaining agreement between the WUA and Major League Baseball provides in relevant part:

An umpire who elects not to become a Union member, but who elects instead to pay financial core obligations, shall support the collective bargaining services that are provided by the Union by the payment of a financial core fee. Such financial core fee shall be limited to the umpire's share of those Union expenses that are related to collective bargaining or the administration of collective bargaining agreements ("Financial Core Expenses"). The Union shall provide bargaining unit members an adequate explanation of the basis for the fee, including its Financial Core Expense, and a reasonably prompt opportunity to challenge its Financial Core calculations in a manner consistent with the Union's obligations under the National Labor Relations Act.

Basic Agreement, Art. 26.

■ The WUA's motion for a protective order seeks to limit to this lawsuit only the disclosure and use of its financial information produced to plaintiffs in discovery. The WUA concedes that the information is relevant and required to be produced but urges the court to prevent plaintiffs from employing it for other purposes.[1]

Rule 26(c) provides in relevant part that: ... for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

. . .

(2) that the disclosure or discovery may be had only on specific terms and conditions . . .

. . .

(7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way

Fed.R.Civ.P. 26(c).

As required by Rule 26(c), the WUA's counsel has certified that it has attempted in good faith to confer with plaintiffs' counsel in an effort to resolve the dispute without court action. Its efforts have been unsuccessful. Plaintiffs have refused to agree to any constraints in the use of the discovery in issue.

It is undisputed that plaintiffs' attorneys are themselves plaintiffs in a separate action in the Court of Common Pleas of Philadel-

---

1. . Plaintiffs' request for production of documents seeks, among other items, copies of all invoices or bills for services rendered by attorneys, law firms or accounting firms for 1999 through 2001; copies of any and all general ledgers for 1999 through 2001; and copies of WUA's financial statements for 1999 through 2001.

phia County, Pennsylvania against the WUA and others for defamation and tortious interference with contracts, among other claims, *Phillips, et al. v. Selig, et al.,* July Term, 2000, No. 1550 (C.P.Phila.).[2] In addition, plaintiffs' attorneys are also the attorneys for the MLUA in two consolidated actions: *The Major League Umpires Ass'n v. The American League of Professional Baseball Clubs, et al.,* Civ. A. No. 01–2790 (E.D.Pa.2001) and *Office of the Commissioner of Baseball, et al. v. Major League Umpires Ass'n, et al.,* Civ. A. No. 01–2816 (E.D.Pa.2001). The WUA is named as a defendant in Civil Action Number 01–2816.

The WUA contends that disclosure of its financial books and records, without a protective order, will cause it severe injury. First, according to the WUA, it would give the parties in *Phillips v. Selig* and *Tata v. Phillips* inside information about the resources for the defense of those actions and Civil Action Number 01–2816. In addition and more significantly, the lack of a protective order would allow the MLUA to utilize the information against the WUA in future labor representation efforts and, if in the hands of Major League Baseball, would extend to the latter an unfair advantage at the bargaining table.

The Court of Appeals thoroughly discussed the law with respect to confidentiality orders in *Pansy v. Borough of Stroudsburg,* 23 F.3d 772 (3d Cir.1994). There it overturned a district court order providing confidentiality for a settlement agreement in a civil rights action instituted under 42 U.S.C. § 1983 by a former Police Chief against the Borough of Stroudsburg.

■ The *Pansy* decision reaffirmed the long-standing principle that courts have inherent equitable power by means of protective orders, " 'to prevent abuses, oppression, and injustices' " in discovery and "to grant confidentiality orders, whether or not such orders are specifically authorized by procedural rules." *Pansy,* 23 F.3d at 785 (cita-

tions omitted). While *Pansy* dealt with the confidentiality of a settlement agreement, the Court of Appeals noted that protective orders for discovery material raise "similar public policy concerns." *Id.* at 786. In each, the court must resolve the tension between privacy interests and another party's or the public's right to know. In making a determination whether good cause exists for a protective order, courts must engage in a balancing process. In doing so, we have flexibility to "minimize the negative consequences of disclosure." *Pansy,* 23 F.3d at 787 (citation omitted).

■ The *Pansy* court identified a number of factors which the court must consider in resolving this tension between privacy and the right to know. The burden is on the party or parties seeking a protective order. *Id.* at 786–87. First, we must determine if disclosure "will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Id.* at 786 (quoting *Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059, 1071 (3d Cir.1984)). Disclosure of trade secrets or other confidential information may fit into this category. While *Pansy* acknowledged the need to protect privacy "to prevent the infliction of unnecessary or serious pain on parties," that interest is diminished when the party seeking protection is a public person or body. *Id.* at 787. The prevention of embarrassment may be sufficient to establish good cause for the entry of a protective order. However, the embarrassment must be "particularly serious" and will be much harder for business enterprises to establish than for individuals. *Id.* (citation omitted). If the information sought involves the public health or safety, the court should favor disclosure of the material. Moreover, to the extent the information is subject to disclosure under freedom-of-information or right-to-know laws, a strong presumption against confidentiality exists. *Pansy,* 23 F.3d at 790–91.

---

**2.** . Several of the *Bonin* plaintiffs have also brought a defamation action in the Court of Common Pleas of Delaware County against some of the WUA's officers and members. *Tata, et al. v. Phillips, et al.,* No. 99–13555 (C.P.Del.). Pilot

Air Freight Corporation, a company owned in part by Richard Phillips, a principal of the firm representing the *Bonin* plaintiffs, is also a named plaintiff in the *Tata* case.

The WUA is currently the exclusive bargaining agent representing the major league baseball umpires. As a union, one of the WUA's functions is to negotiate with Major League Baseball the wages, benefits, and working conditions for all umpires. If Major League Baseball should obtain detailed knowledge about the finances of the WUA through discovery in this case, the scales will undoubtedly tip unfairly against the union and its members at the negotiating table. Furthermore, it is undisputed that the plaintiffs in this action are umpires who are officers and members of the MLUA, a rival labor organization which was ousted by the WUA as the umpires' exclusive bargaining representative after a hotly contested certification election. Clearly, there is animosity between the MLUA and the WUA. Plaintiffs are certainly entitled to full and complete information from the WUA to determine if it is properly charging the financial core fee under the terms of the current collective bargaining agreement. Nonetheless, plaintiffs should not be allowed carte blanche to utilize the information legitimately disclosed in discovery to work mischief on other fronts either to discredit or undermine the WUA or its members. Plaintiffs' refusal to agree to any limitation supports the validity of the WUA's concern.

Significantly, in contrast to the Borough of Stroudsburg, the defendant in *Pansy,* the WUA is not a public entity. Instead, it is a small union representing the private interests of its less than one hundred umpires. As far as we have been made aware, no right-to-know or freedom-of-information law requires the public disclosure of its finances. Nor is the information here related to the health and safety of the public.

As previously noted, the WUA does not seek to prevent full disclosure to plaintiffs. It candidly recognizes that its financial books and records are relevant to this litigation and is willing to produce them. Yet, the WUA has also presented compelling reasons why the use of the discovery outside this case "will work a clearly defined and serious injury" on it and its members and will result in the "infliction of unnecessary or serious pain." *Pansy,* 23 F.3d at 786, 787. Under

Rule 26(c), for good cause shown, we may make "any order which justice requires to protect" the WUA from annoyance and oppression. As the *Pansy* court has stated, we may "minimize the negative consequences of disclosure." *Pansy,* 23 F.3d at 787 (citation omitted). In our view, the WUA has established with the proper specificity the good cause necessary to restrict the use of its financial information to this lawsuit only. At this point, its privacy interest outweighs the public's right to know.

Consequently, we will enter a protective order limiting the disclosure and use of any financial information which is produced by the WUA and which is not otherwise in the public domain from an independent source. Such information shall be utilized solely in connection with this action and shall not otherwise be disclosed. The discovery may be made known to experts engaged by plaintiffs, but any expert must first sign an affidavit attesting to having read the court's order and agreeing not to disclose said information outside this action without further order of court. Said affidavit shall be served on defendant seven business days before any disclosure and shall be filed with the court. This order, however, should not be construed to inhibit discovery in other lawsuits where the information subject to the protective order is properly discoverable.

Recognizing that circumstances may change, we note that our Order is always subject to modification in accordance with the standards outlined in *Pansy.*

### ORDER

AND NOW, this 16th day of October, 2001, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of defendant World Umpires Association ("WUA") for a protective order is GRANTED;

(2) plaintiffs and plaintiffs' attorney shall not disclose or use the financial information produced by the WUA for any purpose other than this lawsuit, except for such information which is in the public domain from an independent source;

(3) the financial information produced by the WUA may be supplied to any plaintiffs' expert only after the expert signs an affidavit attesting to having read this court's order and agreeing not to disclose said information outside this action without further order of court;

(4) said affidavit shall be served on the WUA seven business days before disclosure and shall be filed with the court;

(5) nothing herein shall prevent the discovery in other lawsuits of the information subject to this Order where such information is properly discoverable; and

(6) this order is issued without prejudice to any motion for modification in accordance with the standards set forth in *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 790 (3d Cir.1994).

